FRANCIS L. VAN HOUTEN

*v.*

WILLIAM E. PINE, president, et al.

The by-laws of an unincorporated mutual insurance association provided that in case a member had, for failure to pay an assessment promptly, been dropped from the association by the secretary, the board of directors should have power to re-instate him on his presenting to them a reasonable excuse for such failure and paying the sum in arrear. A member being delinquent appeared before them and offered a sufficient reason for his delinquency, and the board refused to re-instate him, because they alleged that his health was

Van Houten v. Pine.

then precarious.  He died very soon afterwards.—*Held*, that this court might, after his death, examine into and determine the adequacy of the reason so offered, and, in a proper case, compel the association to pay the amount of insurance to which such delinquent's widow was entitled.

Bill for relief.  On final hearing on pleadings and proofs.

*Mr. A. M. Hassell*, for complainant.

*Mr. C. Borcherling*, for defendants.

THE CHANCELLOR.

This suit is brought by the widow of James H. Van Houten, who died June 11th, 1878, against William E. Pine, president, and Charles H. Ingalls, secretary and treasurer of " The Masonic Mutual Life Insurance Company of the City of Newark, N. J.," an unincorporated beneficial association located at Newark, to recover $1,000 which she claims are due to her under the by-laws of the society.   The suit is really against the company, but inasmuch as it is unincorporated and its membership is very numerous (over eleven hundred), the bill is maintained against the two officers above named alone.  *Van Houten* v. *Pine, 9 Stew. Eq. 133.* The by-laws provide that on the death of any member it shall be the duty of the treasurer, within thirty days after receiving notice thereof, to pay $1,000 to the widow or family of the deceased, or to the person to whom the deceased may have directed the money to be paid ; or if there be no widow or family or designated person, then the payment is to be made to his next of kin ; and in case there be no widow, children, designated person or next of kin, then the treasurer is to appropriate towards the payment of the funeral expenses so much as necessary, not exceeding the amount to which the widow would have been entitled if there were a widow ; and if after the payment of those expenses there be any amount remaining, the excess is to go into the permanent fund of the company.   In April, 1877, Van Houten made application for membership of the society, and was admitted in May following.  On the 7th of the latter month there was issued and delivered to him a certificate

that he had been duly elected a member and was entitled to all the benefits of the association under its by-laws. He continued to be a member, as the complainant insists, up to the time of his death; but the defendants, on the other hand, allege that his membership ceased on his failure to pay, within the time limited for the purpose by the first section of the sixth article of the by-laws then in force, two certain assessments payable by him and of which he was notified, as they insist, a second time on the 30th of April, 1878. They also insist that by his default he forfeited all his rights and privileges of membership. The section of the by-laws just referred to as it stood at that date (it has since been amended) provided that upon the death of any member of the company it should be the duty of the treasurer and secretary (the same person) to notify the members thereof, and that thereupon each surviving member should, within ten days after the date of the notice, pay into the treasury the sum of $1, and in case he should neglect to pay it within ten days he should be again notified by the same officer, in which case he should pay the sum of $1.10; and if that money should not be paid within ten days after such second notice, the name of the delinquent should be erased from the roll of members, and he should forfeit all claims upon the company; provided, however, the board of directors should have power to re-instate him upon his appearing before it, if a resident of Newark, and rendering a satisfactory excuse (or, if not a resident of that city, by sending a written excuse for his default) and paying the sum in arrear. The facts of the case appear to be that Van Houten was notified by notice dated April 30th, 1878, to pay $2.20 in respect of the death of two members. The notice purported to be a second notice by its terms as well as by the amount of money required to be paid. The time, ten days, limited by the by-laws for the payment, expired on Friday. On the evening of the previous Monday, the defendant, Mr. Pine, then president, and Messrs. William M. Clark and Seymour Tucker, both directors of the company, called to see Van Houten at his house, where he was then lying sick. At the end of the call, after Mr. Pine had left the room, Van Houten, according to Mr. Clark's testimony, spoke to Mr. Tucker in the

presence of Mr. Clark and Mrs. Van Houten on the subject of
the assessments, stating that he had received a second notice
for them that the time for making payment would expire on the
then next Friday, that he expected to receive some money on the
following Monday, and that if Mr. Tucker would pay the assess-
ments for him he would re-imburse him when he received that
money. Mr. Tucker making no reply, Van Houten said that
if he, Tucker, did not like to wait until that time he would send
and get the money for him at once, to which Mr. Tucker replied
that it was not necessary, that he would attend to the matter.
Mrs. Van Houten and Mr. Tucker both corroborate Mr. Clark
in this statement in all material respects. Mr. Tucker forgot
the matter until Saturday, when he went to Mr. Ingalls, the sec-
retary and treasurer, to pay an assessment of his own—one sub-
sequent to that before mentioned. He then offered to pay the
assessments for Van Houten, but Mr. Ingalls refused to take
payment, saying that he had dropped Van Houten from the roll
for non-payment of the assessments. On the following Monday
Mr. Tucker informed Van Houten of the fact that he had for-
gotten the matter until Saturday, and that he then offered to pay
the money but it was refused, and Mrs. Van Houten then gave
Mr. Tucker the money and requested him to try to induce Mr.
Ingalls to reconsider the matter and to accept payment. Mr.
Tucker took the money and saw Mr. Ingalls on the subject
again, but he persisted in his refusal to receive the money. At
the next monthly meeting of the board of directors, Van Houten
appeared before the board and requested to be re-instated on
payment of the assessments. The reason he gave for not having
paid was, that he relied on Mr. Tucker to attend to the matter
for him. The board refused to re-instate him. They never,
however, at any time, by any direct vote, ordered that his name
should be erased from the roll, or otherwise directly declared that
his membership was at an end. The bill states that there was,
at the time of the transaction under consideration, a custom in
vogue of giving a third notice to delinquent members, and there
appears to be some ground for the statement. Indeed, it is
admitted by the answer that such a notice was given by Mr.

Ingalls to Van Houten in or about November, 1877. It also appears that if such notices were given it was without express authority of the board of directors, and not in pursuance of the provisions of the by-laws. The view which I take of the case, however, renders it unnecessary to dwell upon that subject. The complainant also claims that there never was but one notice of the assessments in question given to Van Houten, and that that was what purported to be a second notice. But it is enough to say on that head that Van Houten never at any time made any excuse or claim to re-instatement on that ground, nor did he ever allege that the notice which purported to be a second notice was the only notice he had received on the subject to which it related; but, on the other hand, in his conversation with Mr. Tucker, before stated, he spoke of the notice as being a second notice, and treated it as such. Not only did he not claim that it was the first notice he had received, but his anxiety to comply with the provisions of the by-laws in pursuance of it as a second notice is evidence that it was, in fact, to him what it purported to be, the second notice which had been given to him for payment of the assessments.

Conceding that the act of the secretary in declaring that Van Houten's name was erased from the roll for his delinquency, was sufficient to put an end to the latter's membership, and that no action of the board of directors was requisite to the legal exclusion of Van Houten from the society (a question which it is not necessary to decide in this case), Van Houten was, under the by-laws as they then stood, entitled to be restored on payment of the assessment. They provided that the board should have power to re-instate one who was delinquent in such case on his appearing before it and rendering a satisfactory excuse and paying the sum in arrear. The excuse given by Van Houten when he appeared before the board and asked to be re-instated was ample and ought to have been accepted. He had provided for payment of the money within the time limited by the by laws by engaging Mr. Tucker, a director, to attend to the matter for him and prevent any delinquency, and Mr. Tucker had, at his request, undertaken to do so. It was merely Mr. Tucker's for-

getfulness that caused the delinquency. It appears by the answer that the excuse was considered satisfactory, but that Mr. Van Houten's physical condition at the time of making the application was taken into the account adversely to him. In the letter of the president to him, set forth in the answer, that is given as the only reason for denying the application. The letter states that in the opinion of a large majority of the members of the board of directors it was deemed inexpedient to restore him to membership in consequence of his impaired health. But the by-laws at that time did not, as they do now, qualify the power of the board of directors to re-instate by the provision that the applicant must apparently be in good health. That appears for the first time in the by-laws of 1879. It is manifest from the testimony that the by-laws were enforced against Van Houten with unwonted rigor and stringency. But conceding the right of the association to do so, it was nevertheless clearly the right of Van Houten, under the circumstances, to be re-instated. And in such a suit as this, against such an association (an unincorporated mutual benefit society), and under such circumstances as this case presents, it is proper for the court to determine the question whether the member was properly excluded or not; to decide whether the action of the trustees or agents to whom the management of the affairs of the association was intrusted was lawful or not; to judge whether the member, by the imputed misconduct or alleged delinquency, ought reasonably to be held to have forfeited his claim to the advantages which the society promised, and in view of which he had, up to the time of the alleged exclusion, discharged his duties to it. The second notice was, as before stated, given to Van Houten on the 30th of April. He was to pay in ten days from that time, on or before the 10th of May. He died on the 11th of June following. He therefore had no opportunity to apply to the courts for redress in the premises. On the 8th of May, 1878 (this was, however, before the expiration of the ten days from the time of giving the before-mentioned second notice), notice of another assessment was given to Van Houten. Mrs. Van Houten paid it for him to a clerk in Mr. Ingalls's store and got a receipt for it, but at Mr. Ingalls's

request she handed the receipt to him and he retained it, returning to her the money she had paid. He refused to receive the payment on the ground that Van Houten was at that time no longer a member of the association. Van Houten, as already appears, died on the 11th of June following. He was ready to comply with the requirements of the by-laws up to the time of his death.

The defendants insist that it is unjust to permit the complainant to prosecute this suit against them alone, seeing that there are over one thousand one hundred other members, all residing in this state, who are as much interested as they in the subject of the controversy. That matter was considered and disposed of on the demurrer. *Van Houten* v. *Pine, 9 Stew. Eq. 133*. It appears by the proof that the association has an invested fund of $25,000. No injustice will be done to the defendants or to those whom they are made to represent in this suit, by a decree directing them to pay the amount due the complainant from the association. The complainant's right to the money, if Van Houten was a member when he died, is not questioned. There will be a decree in her favor for the $1,000 and interest thereon from the expiration of thirty days from the death of Van Houten, with costs of suit, the money to be paid out of the funds of the association in sixty days from the time of filing the decree in pursuance of this decision. Sixty days will be enough to enable the association to raise the money by assessment.